**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EVAN ROMERO,

     Plaintiff,

v.

X CORP. as Successor in Interest to
TWITTER, INC.,

     Defendants.

Case No. 26-cv-3843(AS)

**<u>AMENDED COMPLAINT</u>**

## I.    INTRODUCTION

1.    This case is brought by Plaintiff Evan Romero, who is a former Twitter employee, against Defendant X Corp. as Successor in Interest to Twitter, Inc. (hereinafter "Twitter"), challenging the company's failure to pay promised severance to employees following Elon Musk's purchase of the company in 2022.  Plaintiff brings his claims based on breach of contract and promissory estoppel.

2.    As described further below, in October 2022, the world's richest man, Elon Musk, purchased Twitter and immediately began laying off 80% of its workforce.  Employees had been promised that, should they lose their jobs after the sale of the company, they would be entitled to severance pay, pursuant to Twitter's pre-acquisition severance policy.  However, following Musk's purchase of the company, Twitter reneged on this promise and did not pay the employees, including Plaintiff, the promised severance.

## II.    PARTIES

3.    The plaintiff Evan Romero is a former employee who worked for Twitter in New York and who lost his job following Elon Musk's purchase of the company in October 2022.

Plaintiff worked for Twitter from November 2012 until he was notified of his layoff on November 18, 2022.  Following half of the company being laid off on November 4, 2022, the layoffs continued over the following weeks, including on November 16, 2022, when Plaintiff Romero (along with the remaining Twitter employees) was told he must agree to Elon Musk's ultimatum that any remaining employees would have to "be extremely hardcore", including "working long hours at high intensity" in order to continue working at Twitter. He and the remaining employees still working for Twitter were given until 5:00 P.M. Eastern time the following day, November 17, 2022, to click "yes" on a link to agree to this vision Musk stated for "Twitter 2.0." Plaintiff did not click yes. He was then informed that he would be separated from the company effective February 17, 2023.

4.    In or about March 2023, Twitter, Inc. merged with X Corp., and as a result, Twitter, Inc. and X Corp. became a single entity.

5.    X Corp. is a subsidiary of xAI, which is a subsidiary of SpaceX.

6.    At the time of Plaintiff's layoff, Twitter was a corporation headquartered in San Francisco, California.  Defendant X Corp. is a Nevada Corporation, headquartered in Bastrop, Texas.

## III.    JURISDICTION

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the underlying matters in controversy collectively exceed the sum or value of $75,000, exclusive of interest and costs, and Plaintiff resided and worked in New York at the time of his employment with Twitter.

8.    This Court has personal jurisdiction over Defendant because it has offices and is doing business in this district.

IV.    STATEMENT OF FACTS

9.    Twitter (now known as "X") is a social media company that formerly employed thousands of people across the United States and the world.

10.    In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

11.    Following this announcement, many employees raised concerns regarding the company's policies following this anticipated acquisition, including concerns about how Elon Musk would run the company, as well as concerns of possible mass layoffs.

12.    In order to assuage employees' concerns and try to prevent them from leaving Twitter *en masse* to work at other companies, Twitter made various promises to employees, including Plaintiff.

13.    One important promise Twitter made was that, for a year after the acquisition, Twitter would maintain the same wages and benefits for employees, including severance benefits, in the event the employees lost their jobs after the acquisition.

14.    This promise that severance benefits would stay the same for a year following Mr. Musk's acquisition of the company was communicated directly to Twitter employees, including Plaintiff, both orally (including at periodic "all-hands" meetings and other meetings with management), as well as in writing by Twitter's management through distribution of a Frequently Asked Questions (FAQs) document.

15.    Plaintiff reasonably relied on this promise and maintained his employment at Twitter, rather than seeking job opportunities elsewhere. He did so to his detriment.

16.    Following the purchase of the company by Elon Musk in late October 2022, Twitter openly reneged on this promise.

3

17.     Shortly after he acquired the company, Musk immediately began a mass layoff that led to the ouster of about 80% of Twitter's workforce.

18.     The layoffs began with approximately half of the workforce notified of their layoff on November 4, 2022, with an effective date (for most employees) of January 4, 2023. See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html.

19.     Over the following weeks and months, Twitter continued the layoffs. See Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

20.     Further mass layoffs occurred after Musk sent the following message to remaining Twitter employees on November 16, 2022:

> Going forward, to build a breakthrough Twitter 2.0 and succeed in an increasingly competitive world, we will need to be extremely hardcore. This will mean working long hours at high intensity. Only exceptional performance will constitute a passing grade.
>
> Twitter will also be much more engineering-driven. Design and product management will still be very important and report to me, but those writing great code will constitute the majority of our team and have the greatest sway. At its heart, Twitter is a software and servers company, so I think this makes sense.
>
> If you are sure that you want to be part of the new Twitter, please click yes on the link below:
>
> [LINK]
>
> Anyone who has not done so by 5pm ET tomorrow (Thursday) will receive three months of severance.
>
> Whatever decision you make, thank you for your efforts to make Twitter successful.

Elon

21.     This ultimatum was intended to, and did, result in further layoffs.  More than 1,100 employees, including Plaintiff, did not click "yes" in response to this email and were notified the next day that their employment would end two or (in the case of New York employees) three months later.

22.     Plaintiff was laid off because he did not click "yes" in response to Mr. Musk's ultimatum. Alternatively, Plaintiff was constructively discharged by Twitter.

23.     Twitter's previous policy had provided for greater severance pay for employees than was offered to Plaintiff. The previous severance policy had provided for a lump sum payment of at least two months' pay (six months for Director-level employees and above) plus an additional week of pay for each full year of employment, 100% target bonus pay, cash value of equity that would have vested within three months from the separation date (six months for Director-level employees and above), and a cash contribution for health care continuation. However, Twitter only offered laid off employees one month or less base salary for severance.

24.     Plaintiff did not accept this reduced offer of severance and now brings these claims to recover the severance pay that had been promised to him.

25.     The three months of pay that New York employees, including Plaintiff, received while remaining on payroll following their notification of layoff and their final separation date was not severance pay.  Instead, Twitter offered this period of continued payment to employees to comply with federal and New York WARN Acts (29 U.S.C. §§ 2101 *et seq.* and New York Labor Law §§ 860 *et seq.*).

25.     Plaintiff reasonably relied to his detriment on Twitter's earlier promise that employees who lost their jobs after Musk's purchase of the company would receive at least as

favorable severance pay as they would have received prior to his purchase of the company and that employees would be permitted to work remotely. Based on those promises, he did not seek or obtain employment elsewhere during the uncertain period prior to Musk's purchase of the company.

## COUNT I
### Breach of Contract

As set forth above, from approximately April 2022 through October 2022, Twitter repeatedly informed employees (including Plaintiff), both orally and through a "Frequently Asked Questions" ("FAQ") document, that in consideration for the employees' continued willingness to work for Twitter, if they lost their jobs following Elon Musk's purchase of the company, they would receive severance pay that was no less favorable than what Twitter employees previously received. However, following Musk's purchase of the company, Twitter breached that contract.  After Plaintiff was laid off, Twitter did not offer him a severance package that was at least as favorable as what Twitter provided to employees prior to the acquisition. Twitter's failure to do so constitutes a breach of contract.

## COUNT II
### Promissory Estoppel

From approximately April 2022 through October 2022, Twitter repeatedly informed employees (including Plaintiff), both orally and through a "Frequently Asked Questions" ("FAQ") document, that if they lost their jobs following Elon Musk's purchase of the company, they would receive severance pay that was no less favorable than what Twitter employees previously received.  In reasonable reliance on this promise, Plaintiff continued to work for Twitter, rather than looking for an accepting other job opportunities. However, following Musk's purchase of the company, Twitter reneged on this promise.  After Plaintiff was laid off, Twitter

6

failed to offer him a severance package that was no less favorable than what Twitter provided to employees prior to the acquisition. Plaintiff was harmed by his reliance on this promise, including that he lost the opportunity to obtain other employment when the job market was more favorable.

## **JURY DEMAND**

Plaintiff requests a trial by jury on his claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

a.      Declare and find that Defendant is liable to Plaintiff as the result of Defendant's breach of contract with Plaintiff;

b.      Declare and find that Defendant is liable to Plaintiff under the doctrine of promissory estoppel;

c.      Award compensatory damages, in an amount according to proof;

d.      Award pre- and post-judgment interest; and

e.      Award such other relief to which Plaintiff may be entitled.

Respectfully submitted,

EVAN ROMERO,

By his attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, (NY Bar No. 2971927)
Bradley Manewith (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Dated: June 18, 2026                    Email:  sliss@llrlaw.com; bmanewith@llrlaw.com